**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **WILMA M. BROADWATER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00072 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of Social Security,**[1] | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Wilma M. Broadwater, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Broadwater filed her application for DIB on August 23, 2004, alleging disability as of October 4, 2002, based on degenerative disc disease, bulging disc, degenerative joint disease and diabetes. (Record, ("R."), at 54-56, 61.) The claim was denied initially and upon reconsideration. (R. at 44-46, 49, 50-52.) Broadwater then requested a hearing before an administrative law judge, ("ALJ"). (R. at 53.) The ALJ held a hearing on March 2, 2006, at which Broadwater was represented by counsel. (R. at 24-41.)

By decision dated April 3, 2006, the ALJ denied Broadwater's claim. (R. at 15-18.) The ALJ found that Broadwater met the disability insured status requirements of the Act for DIB purposes through the date of his decision. (R. at 18.) The ALJ found that Broadwater had not engaged in substantial gainful activity since October 4, 2002. (R. at 18.) The ALJ also found that the medical evidence established that Broadwater suffered from severe impairments, namely musculoskeletal pain, noninsulin dependent diabetes and hypertension, but he found that Broadwater did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-18.) The ALJ found that Broadwater's allegations regarding her pain and symptoms were not credible. (R. at

18.) The ALJ found that Broadwater had the residual functional capacity to perform light work.[2] (R. at 18.) Thus, the ALJ concluded that Broadwater could perform her past relevant work as a medical clerk. (R. at 18.) Thus, the ALJ concluded that Broadwater was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(f) (2007).

After the ALJ issued his decision, Broadwater pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 5-8.) Broadwater then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2007). The case is before this court on Broadwater's motion for summary judgment filed May 1, 2007, and the Commissioner's motion for summary judgment filed May 31, 2007.

## *II. Facts*

Broadwater was born in 1947, (R. at 27), which classifies her as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Broadwater has a high school education and two years of college education. (R. at 27, 66.) She has past relevant work as a medical clerk. (R. at 27, 61-62.)

In rendering his decision, the ALJ reviewed records from Dr. Gregory L. DeMotts, M.D.; Dr. Douglas Strickland, M.D.; Dr. Douglas Wright, M.D.; Kingsport Imaging and Breast Center; Holston Valley Hospital and Medical Center; Mountain

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2007).

-3-

Empire Community College; Dr. W. Jan Kazmier, M.D., Ph.D.; Dr. Galen R. Smith, M.D.; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Richard M. Surrusco, M.D., a state agency physician; Kingsport Day Surgery; and Dr. W. Turner Williams, M.D. Broadwater's attorney also submitted medical reports from Dr. DeMotts to the Appeals Council.[3]

On October 30, 1990, a barium enema examination was performed which showed mild diverticulosis. (R. at 198.)

On March 26, 2002, Dr. Douglas Wright, M.D., conducted a nerve conduction study as a result of Broadwater's complaints of numbness in her left leg. (R. at 190.) The study showed no evidence of generalized neuropathy or radiculopathy. (R. at 190.)

On July 1, 2002, Dr. Galen R. Smith, M.D., saw Broadwater for her complaints of low back pain and left leg pain. (R. at 211-12.) Broadwater had decreased range of motion of her thoracic lumbar spine and positive straight leg raising tests. (R. at 211-12.) Neurological examinations of both lower extremities revealed normal motor, sensory and reflex function. (R. at 212.) An MRI of Broadwater's lumbar spine was negative for nerve root compression, and an EMG test was negative for nerve disease. (R. at 212.) Dr. Smith diagnosed low back pain and left leg radicular pain. (R. at 212.)

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 2:06-cv-00072-JPJ-PMS   Document 18   Filed 01/29/08   Page 4 of 15   Pageid#: 75

On November 18, 2004, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Broadwater had the residual functional capacity to perform light work. (R. at 221-26.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 223-24.) This assessment was affirmed by Dr. Richard M. Surrusco, M.D., another state agency physician, on February 3, 2005. (R. at 226.)

On November 29, 2004, Dr. Douglas Strickland, M.D., performed a colonoscopy. (R. at 184.) A few diverticula in the sigmoid region were noted, and Dr. Strickland diagnosed diverticulosis coli. (R. at 184.)

On March 2, 2005, Broadwater saw Dr. W. Turney Williams, M.D., for complaints of left buttock, left thigh and left lower leg pain. (R. at 235-36.) Broadwater reported a 20-year history of low back pain. (R. at 235.) Broadwater reported that over the previous two years, she had begun suffering from discomfort in her left buttock and left anterior lateral thigh to the anterior aspect of the lower leg to the ankle. (R. at 235.) Broadwater also reported intermittent tingling into the left lower extremity, but no frank numbness or weakness. (R. at 235.)

Broadwater's range of motion of the lumbar spine was significantly limited. (R. at 235.) She had sensation and normal motor function of her lower extremities. (R. at 236.) Dr. Williams diagnosed left lower extremity pain, bilateral low back pain with degenerative disc disease, noninsulin dependent diabetes mellitus and hypertension. (R. at 236.) Dr. Williams noted that on February 16, 2005, an MRI showed a left posterolateral disc protrusion at the L4-5 level with possible compression of the left L5 nerve root. (R. at 236.) On March 3, 2005, and March 17,

-5-

Case 2:06-cv-00072-JPJ-PMS   Document 18   Filed 01/29/08   Page 5 of 15   Pageid#: 76

2005, Broadwater had epidural steroid injections at the left L4-L5 level and a fluoroscopy. (R. at 231-32.)

On August 29, 2005, Broadwater reported back pain radiating down her left leg. (R. at 253.) She stated that at times her left knee hurt and felt like it would give away. (R. at 253.)

By letter dated September 14, 2005, Dr. Gregory L. DeMotts, M.D., indicated that he had treated Broadwater for various complaints such as hypertension, elevated cholesterol, noninsulin dependent diabetes mellitus,[4] gastroesophageal reflux disease and degenerative disc disease and degenerative arthritis of the lumbosacral spine since December 2004. (R. at 113-14.) Dr. DeMotts reported that an MRI of Broadwater's lumbar spine performed in February 2005 showed progression of her degenerative disc disease at the L4-L5 and L5-S1 levels.[5] (R. at 113, 179-80.) He also reported that the MRI showed evidence of disc protrusion on the left with possible nerve root compression. (R. at 113.) Dr. DeMotts noted that, when he last saw Broadwater, she complained of pain radiating into her left leg with weakness of the leg. (R. at 113.) A bone mineral density scan was performed and was within normal limits. (R. at 181-82.) Dr. DeMotts opined that Broadwater had progressive disc disease and arthritic changes in her lumbar spine and that he considered her to be permanently and totally

---

[4]Records indicate that Broadwater's diabetes mellitus was well-controlled with diet. (R. at 116-17, 122-24, 127, 129, 136, 138-39, 141-43, 253-56.)

[5]X-rays of Broadwater's lumbar spine performed in February 2002 showed mild osteoarthritis. (R. at 191.) An MRI of Broadwater's lumbar spine showed minor diffuse degenerative disc disease and a minimal annular disc bulge and facet degenerative change at the L5-S1 level. (R. at 192.) The February 2005 MRI was compared to this MRI. (R. at 179-80.)

-6-

disabled. (R. at 113-14.)

On May 2, 2006, Broadwater reported that her lower back pain had gotten progressively worse. (R. at 255.) Dr. DeMotts reported that Broadwater was moving slowly. (R. at 255.) Straight leg raising tests were positive on the right. (R. at 255.) Range of motion was not attempted due to Broadwater's discomfort. (R. at 255.) On June 2, 2006, Broadwater reported that her back pain had gradually escalated to the point that she was having problems "doing much of anything around the house." (R. at 256.) She reported intermittent spasms and "catches" in her back, which she reported interfered with her sleep and activities. (R. at 256.)

On June 13, 2006, Broadwater had an MRI of her lumbar spine performed. (R. at 258-59.) The MRI showed an increase in size of a small disc protrusion at the left L4-L5 level, which resulted in impingement of the left L5 traversing nerve root. (R. at 258.) The MRI also showed a stable moderate L5-S1 degenerative annular disc bulge without canal stenosis or nerve root compression and mild bilateral L5-S1 foraminal stenoses without compression of the exiting nerve roots. (R. at 259.) On July 11, 2006, a lumbar myelogram was performed, which showed severe disc degeneration at the L5-S1 level and mild central stenosis with compression of the S1 nerve root sleeves in both lateral recesses. (R. at 260-61.) A small anterior extradural defect at the L4-L5 level with bilateral L5 nerve root compression in both lateral recesses were also noted. (R. at 261.) A CT scan of Broadwater's lumbar spine was also performed, which showed a shallow left sided protrusion at the L4-L5 level with left L5 nerve root compression and severe disc degeneration with a disc bulge at the L5-S1 level. (R. at 262-63.) Minimal S1 nerve root compression also was noted. (R.

at 262.) Flexion and extension lateral images of Broadwater's lumbar spine showed severe degenerative disc disease at the L5-S1 level with no instability of the lumbar spine noted with flexion and extension positioning. (R. at 264.)

By letter dated July 18, 2006, Dr. DeMotts indicated that Broadwater had "a progressive downhill course with increasing back pain, increasing disability...." (R. at 250.) He indicated that Broadwater was permanently and totally disabled as a result of her degenerative disc disease of the lumbar spine. (R. at 250.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2007); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the

-8-

claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated April 3, 2006, the ALJ denied Broadwater's claim. (R. at 15-18.) The ALJ found that the medical evidence established that Broadwater suffered from severe impairments, namely musculoskeletal pain, noninsulin dependent diabetes and hypertension, but he found that Broadwater did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-18.) The ALJ found that Broadwater's allegations regarding her pain and symptoms were not credible. (R. at 18.) The ALJ found that Broadwater had the residual functional capacity to perform light work. (R. at 18.) Thus, the ALJ concluded that Broadwater could perform her past relevant work as a medical clerk. (R. at 18.) Therefore, the ALJ concluded that Broadwater was not disabled under the Act and was not eligible for DIB benefits. (R. at 18.) *See* 20 C.F.R. § 404.1520(f) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently

-9-

explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

Broadwater argues that the ALJ erred in failing to evaluate her complaints of pain. (Memorandum In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-10.) Broadwater also argues that the ALJ erred in rejecting the opinions of her treating physicians. (Plaintiff's Brief at 8, 11-13.) Broadwater argues that the ALJ violated Social Security Ruling 96-7p when he based his credibility determination solely on the medical evidence. (Plaintiff's Brief at 8, 13-14.) Broadwater next argues that the ALJ erred by failing to find that she was disabled under the Medical-Vocational Guidelines, ("the Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2. (Plaintiff's Brief at 14-15.) Broadwater further argues that the ALJ erred by finding that her condition did not meet or equal the listed impairment

-10-

for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.[6] (Plaintiff's Brief at 8, 15-16.)

Based on my review of the evidence, I find that substantial evidence does not exist in this record to support the ALJ's finding that Broadwater's condition did not meet or equal the impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A). To meet § 1.04(A), a claimant must suffer from either a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A) (2007).

The Commissioner argues that Broadwater's argument on this issue be rejected because the required evidence of nerve root compromise did not surface until after the relevant time period. (Defendant's Brief In Support Of His Motion For Summary Judgment, ("Defendant's Brief"), at 19.) Based on my review of this evidence, I recommend that the court reject this argument and remand Broadwater's claims to the Commissioner for further consideration consistent with this opinion.

---

[6]Broadwater does not argue which part of the listing 1.04 she claims she meets. However, she references nerve root compression characterized by neuro-anatomic distribution of pain, which is only referenced in section "A." (Plaintiff's Brief at 15.)

-11-

The undisputed evidence in this case shows that Broadwater has suffered from degenerative disc disease with radicular pain into her left leg for years. The ALJ found that there was no evidence that Broadwater suffered from nerve root compression. (R. at 16.) Nonetheless, three sentences later, the ALJ noted that a February 16, 2005, MRI of Broadwater's lumbar spine showed a disc protrusion at the L4-5 level with mild L5 nerve root compression. (R. at 16.) The ALJ also noted that, on July 1, 2002, Broadwater had decreased range of motion of the spine and positive straight leg raises on the left. (R. at 16.) Furthermore, the record contains evidence of Broadwater complaining of weakness and a feeling that her left leg was giving away. (R. at 113, 253.) Thus, the ALJ's decision, on its face, shows that the ALJ erred in stating that the record before him contained no evidence of nerve root compression.

Broadwater presented additional evidence to the Appeals Council, dated up to four months following the ALJ's decision. In particular, the medical records show that in May 2006, Broadwater had positive straight leg raising tests, and range of motion was not attempted due to discomfort. (R. at 255.) An MRI performed in June 2006 showed a disc protrusion, which resulted in impingement of the left L5 nerve root. (R. at 258.) A lumbar myelogram performed in July 2006 showed severe disc degeneration at the L5-S1 level and mild central stenosis with compression of the S1 nerve root. (R. at 260-61.) It also showed a bilateral L5 nerve root compression. (R. at 261.) A CT scan showed nerve root compression and severe disc degeneration with a disc bulge at the L5-S1 level. (R. at 262-63.) Furthermore, x-rays performed in February 2002 showed that Broadwater had mild osteoarthritis of the lumbar spine. (R. at 191.) An MRI of the lumbar spine performed in February 2005 showed evidence of possible nerve root compression. (R. at 113.) In March 2005, Broadwater

had significantly limited range of motion of the lumbar spine. (R. at 235.)

Based on this evidence, it appears the undisputed evidence shows that Broadwater suffered from degenerative disc disease resulting in nerve root compression characterized by neuro-anatomic distribution of pain, limitations of spine and positive straight-leg raising tests. There also appears to be evidence in the record that Broadwater also was complaining of weakness and the giving away of her left leg, which could indicate motor loss. Therefore, I believe it would be appropriate to remand Broadwater's claims to the Commissioner for further consideration of whether her condition meets the requirements of § 1.04(A).

For all of the above-stated reasons, I find that substantial evidence does not support the ALJ's failure to find that Broadwater met or equaled the requirements for the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A). Given this disposition, I find it unnecessary to address Broadwater's remaining arguments on appeal.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the ALJ's finding that Broadwater did not met or equal the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A); and

2. Substantial evidence does not exist to support the ALJ's finding that Broadwater was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Broadwater's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate the decision of the Commissioner denying benefits and remand the case to the Commissioner for additional consideration pursuant to this decision.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 1993 & Supp. 2007):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 29th day of January 2008.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE